May it please the court. This is an ERISA case over dialysis services provided under the CHS health plan. I represent CHS and the CHS plan. The district court's bench judgment in favor of the provider here, DSI, should be reversed and rendered for two reasons. First, the anti-assignment provision in the CHS plan bars DSI's claim. Second, to the extent DSI relies on a state assignment statute, that statute is preempted. This court's decision on anti-assignment, LATERNO, is on all fours. And just as the anti-assignment provision there rendered void any purported assignment between the provider and the participant, the same is true here. LATERNO cannot be distinguished. To the extent the district court relied on Harris to distinguish LATERNO, that reliance was misplaced. Footnote 4 of Harris says that LATERNO was a case about coverage, but reading LATERNO itself, it's clear that it's a case about standing. And the issues of coverage were reserved at the end of LATERNO. As for preemption, this court's decision in Texas Life says that a state statute that, in essence, assigns an ERISA cause of action is preempted by ERISA. That is the Fifth Circuit law. It predates Louisiana Health. We're not dealing with standing here. That's not an issue. I'm really speaking in terms of the statutory standing, Your Honor, under ERISA. Right, but we're dealing with the contract. Yeah, we're dealing with what does the contract provide. Correct, Your Honor. The statute, ERISA speaks in terms of participants and beneficiaries. And in order for a third party who is not in privity with the plan to come to federal court to sue, sorry. Right, right, absolutely. And so I do have some questions because although the plan does contain a no-covered person shall have the right language on page 54 of the plan, there is some language at the bottom of page 25, for example, that says, you must produce and deliver to the plan administrator all assignments and other documents as requested. And there are several other little places here and there that seem to think that there might be assignments. And I'm wondering why are those there if you believe you have this, are those vestiges from some other document that was cut and pasted or what's the situation? So the same language in material terms was also in LATERNO, Your Honor, if you'll look at the gray brief on pages 9 through 10. The primary sentence that DSI points to to create an ambiguity was also in the LATERNO plan. And it speaks in terms of a direct payment. And it simply authorizes the plan to pay, to make a payment directly to a provider. But it does not give that provider standing, either administratively or judicially, to participate in the administrative realm or to file a lawsuit. And in LATERNO, the court said that the language of the anti-assignment was plain. There was no ambiguity found whatsoever. And notwithstanding the fact that the plaintiff in LATERNO was holding the same document that the plaintiff here is holding, the court found that it was worth nothing on page 353, worth nothing. It did not create administrative or judicial standing. They were left to deal with the discretion of the plan administrator just as DSI was here. DSI never had an assignment when they were pursuing administrative remedies here. All they had was a document that authorized them to receive benefits approved by the plan administrator. That's it. And that's the same thing that they held in LATERNO. And that's not enough to open the doors of the administrative realm in a self-funded ERISA plan to a third party with whom the plan has no privity of contract. The preemption argument is the same as it was in Texas Life because this statute that the district court relied on assigns an ERISA cause of action. And that was the exact situation in Texas Life. That's 105 F. 3rd at 218. Since then, the Gobelli decision has Before we skip to Gobelli, can we deal with Louisiana Health? Yes. So is the best argument on your side that really the Texas case predates Louisiana Health? And I'm just talking about preemption now. Yes. Because the Louisiana Health and Louisiana statute there and the assignment of payment rights sure seems very similar to what's going on in this case. So there are three ways to distinguish Louisiana Health. First is that Gobelli has Second, the statute in Louisiana was simply a direct payment statute, whereas the Tennessee statute is an assignment statute. And third, this is a self-funded plan. On the second one, though, your whole point is that the piece of paper that the plaintiff is holding in this case is just an assignment of payment rights. Correct. It's not an assignment at all. You can avoid all of that and decide this case purely on that issue alone. Because it's undisputed that until four days before this lawsuit was filed, DSI did not have an assignment. So any assignment statute is irrelevant. If they didn't have standing to pursue any administrative remedies, they have no standing to file a lawsuit in federal court. So you can decide that issue and not get into any of the interesting jurisprudential issues in the case. But can we? Yes, Your Honor. Because there was no exhaustion whatsoever. There was no...  I would love to. So the third basis to distinguish Louisiana Health is that this is a self-funded plan. As the concurrence in Louisiana Health makes clear, a self-funded plan cannot be deemed an insurance company for purposes of a state statute. The Tennessee statute here speaks in terms of insurance companies must allow assignments and they must put those in the plan. And so what the district court has done is take a self-funded plan and deemed it an insurance company for purposes of that, which is a plain language violation of the deemer provision in ERISA. The other point I was going to make is that in answer to your question, Judge Oldham, excuse me, the Louisiana Health court decided to mention the other circuit, the other circuits that seem to be split and relied on this presumption against preemption to say, well, we feel like we must go this way because we're following travelers. Now that the Supreme Court has made it clear that travelers was a mistake and there's no reason, and I would ask the court to stay consistent with the Eighth and Tenth Circuit decisions and the Blue Cross case in St. Francis and find that this state statute is preempted. I'm very confused as to what, it doesn't, maybe this is the, it's not exhausted argument. There's a document where they were assigning their benefits in 2012. The idea that they could just be paid directly. So that document says that I request that payment of authorized benefits be paid to DSI. Yes, exactly. There's really not a problem with this unless the issue is whether or not certain benefits are authorized or not. Whether they're actually the right amounts and whether they're customary and that sort of thing. But it doesn't seem like that was ever litigated out. If you look at that document on page 2702 of the record and compare it to the language of the plan that you were mentioning earlier Judge Elrod, page 2763 of the record. If you'll look at the fourth and fifth sentences of the provision, what this is, is a direct payment authorization. It lets you pay them directly for what, instead of paying the patient and then the patient paying the other people. If it's a correct customary and appropriate amount and it's, y'all have determined that and everybody agrees what the amount due is, you can just bypass the patient and pay the provider. According to what the plan and its discretion determines. And the plan lets you do that. The plan, the next sentence. May pay a benefit directly to the provider. That's if authorized. In writing by the covered person. The plan may. And it's authorized in writing and the plan has the choice to do that if it chooses to do that. And plans do this all the time. And then the next sentence says the plan will not honor claims for benefits, which is what participants under the language of ERISA and its claims regulation. Participants and beneficiaries can file claims in the administrative realm. So the language of the plan distinguishes between claims for benefits and just payment. And so the convenience provision, which was also at issue in LATERNO, if you'll look at footnote two of that case, that plan had the exact same language. There's no tension between direct payment that a plan may authorize and allowing a third party out of network provider into the administrative realm to whom you owe fiduciary obligations and to allow them into federal court. Right. I completely understand that. But I guess what I don't see is there's a big, I don't see the argument about whether or not these things were customary and reasonable and should be paid. And all of that argument, I don't see. In our briefing? Well, in the record. Okay. It seems like we jumped then. We've got an assignment of benefits, which is what you were talking about on the eve of, on 2015, which is also, they're assigning legal claims. It's a different type of assignment altogether. That is in the record, the adjudication. Right. That's 0471, plaintiffs. What happens in the administrative realm is that the plan administrator determines that all they're entitled to is two times Medicare. I'll give you a couple of sites for those documents. 3205 and 3203 are two examples. And the plan administrator says anything in excess of two times Medicare is an overcharge and it is in excess of usual and customary. They then appeal that and there's an appellate decision on 3435 where the administrator says you have not provided any information to the contrary. Your appeal is denied and here are all of the provisions that the plan has that bar your claim, including the anti-assignment provision. That's on page 3436. I guess I don't see how they would be entitled to recover even if they could specifically proceed in this form to recover. That's a question I have. And that would be an alternative basis to affirm, Your Honor. Correct. The plan acted within its discretion and they've not shown that it was arbitrary and capricious to limit their claims to what was authorized. Thank you. Thank you. Sorry for running over time. Appreciate you answering our questions. Mr. Clark? Yeah. Yeah. Oh. Yeah. Okay. Apparently he has four minutes. It'll be your turn in a minute. You'll get your full time. May it please the Court, Scott Clark for Appellant MedPartners Administrative Services. I'd like to speak particularly and briefly to a couple issues that concern MedPartners in particular. MedPartners Administrative Services, like the name suggests, provided administrative services. They were hired by CHS to assist with processing claims under the CHS plan. That CHS plan identifies CHS as the plan administrator. It also says that as the plan administrator, CHS has sole, exclusive, final authority over claims decisions. If a party is unhappy with the initial claims decision, they can go through two levels of appeals. The CHS plan expressly provides that the party that provides the initial claims decision, in this case that was MedPartners, that party may not be the party that acts on the second and final appeal. If you dig into the procedural history of this case, you'll see that when the lawsuit was filed, CHS had not yet acted on the second appeal. So the district court abated proceedings and remanded to CHS with instructions for CHS to make a determination on that second appeal, which CHS ultimately did. And that's what the district court then evaluated, and that's what's before this court, that decision by CHS. MedPartners played no role in that decision by CHS on the second appeal, as was supposed to happen under the terms of the CHS plan, which says that CHS has sole, exclusive, and final authority over the claims decision. There's a lot of discussion in the briefing in this case about this court's life care opinion. The life care opinion says that a proper defendant is a party that controls the administration of the plan. In the life care case, the life care court decided that the third party administrator, the party in the role of MedPartners in that case, in that case, the third party administrator had essentially become the de facto plan administrator. And so in that case, the third party administrator could be liable. But there's a distinction that's discussed in life care, which I think is essential for our case. The life care court said that if the third party administrator in that case had referred all disputed claims to the plan administrator, then the third party administrator would not be liable for that decision. And that is what happened in our case. Under the terms of the CHS plan, final appeals go to the plan administrator, CHS. That is what happened in our case. CHS made the final decision. Under this language in life care, that means the third party administrator, in our case MedPartners, is not liable for that plan decision. There are cases which are discussed in our brief that follow life care and apply life care. I don't have time to discuss those now, but if you get into them, you'll see they say that where the third party administrator has some level of involvement in initial claims processing, but then some other party makes the final decision. The third party administrator is not responsible for funding the benefits based on that final decision. It's whoever makes that final call. So this is the only, you're only arguing right now that you're not jointly and severably liable for unpaid benefits. For unpaid benefits. At the end of the day. Yes, Your Honor, and also for these three. This is your backup in case all these other things lose. Yes, I mean, we're joining CHS in all their other arguments, but even if the court were to rule against. Then they have to be by themselves, and you're not responsible. Because they made the final decision, and the case law holds that means they control the decision process, and they're the party who's liable. What about the joint and sever liability with regard to attorney's fees? Under the ERISA statute, the statute says that the district court can consider the culpability of the parties, and whether it was bad faith by the parties. The district court held that during the initial stages of the litigation, the defendants had acted in good faith, and so the court. I'm talking specifically about post remand attorney fees. Exactly. The district court remanded at which point CHS made the final decision. MedPartners was not involved in that decision. The district court decided that CHS had acted. Their decision was neither well reasoned nor supported by evidence. They wanted to discourage that kind of conduct. The conduct the district court wanted to discourage was CHS's conduct. So I think it was error to make MedPartners jointly and severably liable for those attorney fees. But y'all made that argument to the district court. Oh, yes, we did, Your Honor. Yes. Okay, thank you. You may. It's your turn. And you have not four minutes, but 20 minutes. Thank you. My name is Michael Hood, and I'm here on behalf of the Appalachian DSI Laredo. First, just, it does get a little confusing. The first benefits determination was made by MedPartners, the TPA, who denied DSI's claims on the basis that they exceeded twice the Medicare rate. The plan's definition of customary is within the range of what other hemodialysis clinics charge in Laredo. So by going to the Medicare rate, which is not mentioned in the plan definition, as the district court judge said, they just stretched for something. They made up their own definition. That was abuse of discretion. Our argument is they were the TPA. They didn't even have the plan administrator's rights. So that really should have been a de novo review. But the district court said, even under the abuse of discretion, they misapplied the plan. Okay. So then we go to the district court, and she grants a remand. She remands back for CHS to do a second benefits determination. They do it, and they come back and deny DSI's claims to the extent they exceed a consulting charge for paradenal dialysis. The district judge said, that's bad faith. That's not what these services were. So she denied that. Then finally, at the end of the case, the judge on her own said, I think we should cap DSI's charges at 50%. DSI filed a motion to reconsider, and the judge rejected that position. She said, no, there's ambiguity in the plan about 50% cap. I'm not going to apply it. What's important to note is that there was never a benefits determination on the 50% cap. That's not something MedPartners or CHS ever decided. So all the decisions that stem from that are not before the court. CHS did not appeal the second benefits determination, and to the extent they appealed the 50%, that's a red herring, because that was never a benefits determination. The judge grasped it for a little while and then let it go. All right. With that having been said, let me talk about the assignment. The assignment was, I hereby authorize you to pay my provider directly. And Judge Elrod held up the assignment of benefits form. For 30 years, since the Herman cases, that language, I hereby authorize the payor to pay the benefits directly to provider, has been an assignment, and it's been an assignment to the provider of derivative standing to sue for nonpayment of covered benefits. So I understand the argument that it's an assignment or purports to be an assignment, but can we talk about the text of the assignment clause in the plan itself? Yes. So if you have it in front of you, I'm looking at page 2763 of the record, and by my count, this assignment clause has seven sentences in it, okay? The first three sentences say, no assignment, no assignment, no assignment, okay? The word assignment appears in there three times, and it says, absolutely no assignment. It's not obvious to me how they could have done it any clearer other than say, we absolutely really, really, really mean it, no assignments. Then there's a fourth sentence that talks about payments for convenience, but doesn't use the word assignment. We can come back to that because I'm sure that's the important one from your perspective. And then fifth sentence, sixth sentence, and seventh sentence all say, no assignments. Okay. So seven sentences, six of which talk about absolutely no assignments, no assignments, and then the fourth sentence says you can make convenience payments. I don't understand how that's ambiguous as to whether and to what extent the insured, HS, can make an assignment to your client, DSI. Let me address that. The assignment clause says six ways from Sunday, no assignments. We have the right to dishonor assignments. The provider doesn't have derivative standing. Okay. The fourth sentence, which has the language, the patient may authorize the payor to pay the provider directly, has, whether you call it a risk of federal common law, whether you call it gap filler, whatever you want to call it, that language means there's an assignment to the provider of the right to sue for unpaid covered benefits. So that can't be right because literally the next sentence says you can't bring third party claims, right? Okay. Let me, let me, your point is what the fourth sentence gives, the fifth sentence taketh away. Okay. The problem is all the sentences that you've cited conflict with the fourth sentence. They conflict. That's what raises the ambiguity. What they needed to do is they needed language to displace this 30-year body of ERISA law. Okay. They could have done that. In fact, they brought to your attention a Third Circuit case, which is a perfect example of language that displaces this. It doesn't, it's not enough just to conflict it, to say something contrary, because that raises the ambiguity. You need to displace it. So they could have displaced it. What could they have done? They could have said, as you saw in the Third Circuit case, that the patient's authorization to pay the provider directly does not assign the right to sue for benefits. That displaces it. Then all the rest of your language is consistent. But without that language, that displacement language, what you have are a bunch of sentences that conflict, and that's exactly why the district court judge said, if you want to do these plans and you want to do an anti-assignment, which you know we don't like because, as Judge Elrod said, it's completely contrary to the real world, then do it in plain, simple language that makes clear to everyone, including federal court judges, what you're trying to do. And they didn't do that. Adding more and more sentences doesn't help. Just make it clear like the Third Circuit did. Two sentences. They did it. Now, also in the real world, this hardly ever happens. You know why? Because since Herman and since all these circuit courts have come out and said, your authorization lets you do this, what plans now do is they authorize themselves to pay the provider directly. And when they do that, you don't have a conflict with the patient's authorization that assigns the provider the right to sue for unpaid benefits. And they cite 20 cases in their reply brief. But you look at those cases and they're about the plan authorizing itself, the discretion to pay. Here, CHS chose a plan that says, patient, if you authorize this in writing, we'll do it. That's their choice to do, but they need to make it clear and unambiguous. And they didn't do that. It says that they may do it. Well, first, if you authorize us, we may do it. Okay. But may is we'll do it. And that's what they did. There is no dispute. I thought it was up to the plan whether it does it or not. It can be authorized by the patient, but the plan can choose to do this to make it easy for the patient or not. Well, in this case, there's no issue that they honored the patient's authorization. They paid directly. Right. But that's different than having a right to come back after the plan. You may say as a courtesy, we'll pay directly. But that's different than saying you can sue us directly if for any benefits you didn't get paid.  Well, two points. One, we can't ignore the 30-year body of ERISA law that says a patient authorization assigns the right for a provider to sue for unpaid covered benefits. It's not fair to not read that. That is well-established, broad consensus of the circuit courts. Okay. But they bargained for something different. I mean, we can argue about whether it was a real bargain or not. Yeah, yeah. But they got something different in this plan. And then to the extent that we are fine-tuning the word may in the concept of 30-year ERISA body of law and all the other things, then I think it's fair to say that the ambiguity is construed against the plan and in favor of the patient. Why is that? Because isn't the rule normally that ambiguity is construed in favor of the plan administrator? They get to, in an ambiguous term, they win unless it's completely outside the ballpark. That's a good point. And that goes back to what I was saying. Number one, the first benefits determination was med partners who denied the claim on the basis of it was exceeding 200% of Medicare. They did not deny it on the basis of the anti-assignment. Are you saying they forfeited the right to do that at some later stage? The first benefit determination. The second benefit determination was CHS. And the court found that that was a bad faith. If you know the Wilbur factors, bad faith is one of them. And CHS did not appeal the second determination. So you don't have before you a point of appeal about the plan's administrator having discretion to resolve ambiguity about the anti-assignment. You don't have that in front of you. So we just have to be de novo on the plan itself? That's what the district court did. That's what you would do. Okay. So you believe that the normal ambiguity goes to the administrator does not apply because they failed to appeal that properly. Is that right? It does not apply because, for the reasons I said, med partners didn't apply it in the extent CHS did, they didn't appeal that. The second benefit determination has not been appealed. Should we reach, if we disagree with you and think that this plan does not, that has an unambiguous, just assume argument has an unambiguous anti-assignment provision, should we reach the Tennessee issue anyway? Oh, I'm sorry. If it's ambiguous. If it's not ambiguous, if you're losing on the first issue, is there any reason that we need to address the second issue because this is coming up all the time or some policy reason that you want to say? If the court finds that the anti-assignment clause applies, then the alternative that the district court found was that the anti-assignment clause is not affected because of the Tennessee. Okay. So we have to reach the Tennessee issue. I mean, if you were to find for me on the assignment, you would not have to. Right. But if we go the other way. If we go the other way, then you would need to go. So you need to address that now. Okay. So going to the Tennessee assignment statute, and of course, CHS did not appeal that the plan was a Tennessee issue insurance policy. Okay. So we spot you that. We spot you that you get the benefit of the Tennessee law if the Tennessee law applies. So the issue here is whether ERISA preempts it. And our defense is that ERISA does not preempt the Tennessee assignment statute. Let me talk about Texas Life. Texas Life is a Fifth Circuit 1997 case that CHS argues says that anti-assignment clauses are preempted by ERISA. I realize, and this was prior to Rapides, the reason you don't see this in Rapides is because Texas Life is about a pension plan, and under ERISA, the pension plans have an express anti-assignment clause. So when you're talking about a state statute here, which was about a pension plan, there is an express ERISA provision that says no assignment. So the Fifth Circuit unsurprisingly found that that was connected with and preempted by ERISA, but that's not what we have. We have a welfare plan, and as we all know, ERISA says absolutely nothing about assignments in a welfare plan. So looking at the ERISA, the ERISA preemption analysis in a nutshell, is it related to? That doesn't help you much. Is it connected with? What does that mean? Well, first of all, as I said, ERISA says nothing about assignments, so we're not talking about a matter of plan administration set forth in ERISA. Cases like, I pronounce it GO-B-A, but perhaps I mispronounce it, that related to a state statute that specifically addressed matters that were in the ERISA plan administration procedures. So that did relate, that was connected with, that did have a matter of plan administration, and that was preempted. We're not that case because our ERISA says nothing about assignments. So the real question before the Court is, does this interfere with nationally uniform plan administration? And we would argue no for these reasons. First, it's limited to an ERISA plan that consists of a Tennessee-issued insurance policy. Second, all it's saying is that if you have an ERISA plan that's an insurance policy, all it has to do is say that the patient's entitled to assign benefits. That's a one sentence, not a great burden. You could even put in there, if applicable law applies. Okay? So that way all your plans all over the country could say that same language and it would only apply to something like Tennessee or Louisiana. I think Texas has one too. Okay. And then the third point I want to make is that if, and this is RAPIDS all over, this is RAPIDS 2.0. Nothing's changed since RAPIDS. You still have an assignment of benefits, which is simply one party gets substituted for the other. There is not an expansion of rights. There's not new plan administration. It's just, and think about it. In the real world, this is what happens. We work, the interaction is all between the payer and the plan. Claims are processed electronically. They're paid this way. They work it out. Okay? What CHS is saying is, well, when there's a dispute, all of a sudden now it's too burdensome on the plan to interact with the provider. What's changed? Nothing's changed. In RAPIDS, the Fifth Circuit specifically noted that the statute applied to bringing an action for benefits. The hospital got assigned that. In this case, the provider gets assigned that. There's no added benefit or burden or whatever. Finally, my last point is, is that if this one provision about putting the, saying in the plan that the patient is entitled to assign benefits, if that's too onerous, then that part's not, that part's preempted. The rest of the statute, which is what our argument is, the rest of the statute's fine. Our argument is that what, our defense against the preemption is that the patient is entitled under the governing Tennessee law to assign benefits. We don't, we're not arguing about whether it was in the plan or not. Speaking of things not argued, there's a ton of stuff argued about how we pronounce that case, the Louisiana case, RAPIDS, Texas Health, and the presumptions of preemption or against preemption that have applied under Travelers or under Gobeil. Do you have an argument that the plain text of this Tennessee law does not relate to, does not relate to the ERISA plan? I mean, it specifically says that this person may assign these benefits to the healthcare provider. The plan itself says, again, if we get to this part of the argument, we have to assume arguendo that we've said it does in fact prohibit the assignment of benefits to a healthcare provider. It seems really related to, they do the exact same thing, just in opposite directions. Well, our argument is that the Tennessee state statute is not related to ERISA because we have pursued the ERISA analysis of, is it connected to, is this impair nationally uniform plan procedures? And we've concluded that it doesn't. I understand that argument. I'm just talking about the ERISA preemption clause. Any and all state laws insofar as they may now or hereafter relate to any employee benefit plan, just that clause. Okay. I just have a short time remaining. You may take whatever time you need to answer Judge Oldham's question, which is an important question to the case. Sure. So ERISA's had an evolution. Travelers was a reigning in because they said relate to could mean anything. Everything can kind of relate to. We're going to rein it in and we're going to go back to look at the state's rights, look at what ERISA's intended to do, look how clear ERISA is or isn't on this subject. Now, with ERISA or any federal law, it's all preemption of federal law. So on ERISA, because it has that nebulous relate to language, then you have to do an analysis. If what is in the ERISA language is so clear pursuant to the text, the plain meaning, then that's what the courts ought to apply. They shouldn't do a presumption against preemption when the text says what it needs to say. Let's use an example. It's that Franklin case, the California Franklin tax case. That's a Federal Bankruptcy Code case. It was clear in the text and the Supreme Court said we're not going to do a presumption against preemption. We're going to go right to the text. The text is clear. We apply that. Compare and contrast that to the ERISA body of law, which is what does relate to mean? Let's look at the text of ERISA. If it's not clear, and in this case, absolutely nothing about assignments, so we can't go right to the plain text. So it's appropriate to step back in ERISA and say states' rights, police powers, what does ERISA want here? There's still a presumption against preemption when you relate to ERISA. I don't believe that that California Franklin law says travelers is overruled, presumption against preemption is wrong. We don't follow that anymore, and then take it to ERISA level. It doesn't say any of that. Franklin doesn't say any of that. If we were to conclude with you, wouldn't we create a circuit split on that issue? I don't believe the circuit courts that they referenced in their brief were ERISA. They were a lot about FAA and other federal laws, maybe the bankruptcy. Well, bankruptcy code got up to the Supreme Court, but other federal court cases addressed other federal law. I haven't seen a split where somebody has said in ERISA that travelers' presumption against preemption when the text is not clear is gone. I don't see that. Okay. Thank you, counsel. We have your argument. We'll hear again from the other side on rebuttal. Thank you. Judge Elrod, first of all, the Blue Cross Blue Shield of Arkansas case from the Eighth Circuit and the Tenth Circuit case, St. Francis, specifically and expressly preempt assignment statutes in this precise ERISA context. Second, Judge Oldham, you asked about the Tennessee statute. It specifically tells an ERISA plan what it must contain. Not only does it mandate assignment, it says that assignment right must be stated clearly in the policy. So that goes right to the heart of the plan. Third, if I have any time left from what I took up earlier, I just wanted to quickly go through the 30 years of ERISA law. He's citing the Herman cases from this court, Herman 1 and Herman 2. Herman 2 was written by Judge Wiener, who also wrote Letourneau. There's no conflict between those two cases. Letourneau looks at specific language that's also in this plan. If you look at page 9 of the reply brief, the sentence he's relying on is not as a convenience to the out-of-network provider, it's as a convenience to the participant. And ERISA requires a plan to be the trustee to its wards. The participant, the insured as you've called him, HS, he is whom we owe fiduciary obligations. His incentives are the same as ours, which is to keep health costs low. And when he's in the administrative realm, we have those same incentives in common. And he's the ward, we're the fiduciary. When an out-of-network provider comes in, their incentives are the exact opposite. Their economic incentives are to get as much as they can get. And so it's not the same claim. And it's why this language exists in the plan, is to say, if I have a negotiated rate with you in my network, I'll pay you directly as a convenience to my participant, because we're in privity. We know what dialysis costs. When someone comes in and charges $6,000 for one dialysis treatment, when Medicare and the Secretary of Health and Human Services have looked at cost, 42 U.S.C. 1395 RR, Congress told the Secretary to study all of this, make sure what are the costs, what profit margin can a dialysis clinic earn? The Secretary studied all that. And $250 is the rate. But that may be different in Laredo. And the statute speaks to that, Your Honor. Subsection B14 tells the Secretary to adopt a system that has upward and downward adjustments based upon geography and wage index. But your plan is not tied to the Medicare rate. No, it's tied to what's usual and customary. Customary. And the plan administrator knew when they got a bill for $6,000 for one dialysis treatment, that's not usual. Well, we don't have a sorting out of the usual and customary the way we would normally have a record on that. So the last thing I wanted to say, Judge Alrod, you asked about DeNovo. There are two Fifth Circuit cases you need to look at, Porter and High. Both say when the plan has got discretion to make these decisions in a self-funded scenario. That's footnote 13 of Porter and High. But you didn't, is it true you didn't argue this to Judge Marmolejo? We argued all this to Judge Marmolejo. You argued that the plan administrator had the discretion and even if it was ambiguous, you argued that. We did, Your Honor. But you didn't argue. I can give you a record plate. But you did not argue that whenever you were getting the claims processed at the time. You were just arguing about amounts at the time. In the administrative room. Yes. In the lawsuit, we did. Yes, thank you, Your Honor. Sure. Counsel, one final question. I'm sorry to belabor it. So I understand that Arkansas, Blue Cross, and St. Francis both support you on the relates to argument as a risk of preemption. Are there cases, in particular on this assignment question, are there any cases on the other side of those two that would suggest that an assignment statute like the Tennessee does not relate to the ERISA plan? In ERISA, in a federal circuit? No, Your Honor. Are there somewhere else that are not in a federal circuit? There are some state Supreme Court cases that deal with the issue stripping off the issue of preemption. Got it. There's an Arkansas case that's in conflict ostensibly with Blue Cross Blue Shield, but it's not an ERISA preemption case because it's in the state Supreme Court. Thank you. Thank you, Counsel. Are you going to take your one minute, Counsel? I will just make one point back to MedPartners as the third-party administrator in this case. If initial claims processing by a third-party administrator was enough to make the third-party administrator liable for paying benefits under the plan, even where the ultimate decision is made by a different party acting as the plan administrator, then the third-party administrator would be liable in every case because the third-party administrator is always going to have some level of initial involvement in the claims handling process. What LifeCare indicated and what the cases since then have held is that when the ultimate decision is made by another party, then the third-party administrator is not liable for paying those benefits. Okay. Thank you, Counsel. We have your argument in this case submitted, and we appreciate the helpful arguments in this case, which is complicated. And the court.